UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PEDRO DURAN ALIX,                    )
                                     )
                    Petitioner,      )
        v.                           )          CIVIL ACTION
                                     )          NO. 17-10619-PBS
RAYMOND MARCHILLI,                   )
                                     )
                    Respondent.      )

# REPORT AND RECOMMENDATION ON
# PETITION FOR WRIT OF HABEAS CORPUS

August 7, 2019

DEIN, U.S.M.J.

## I.  INTRODUCTION

In December 2013, the petitioner, Pedro Alix ("Alix" or "defendant" or "petitioner"), was convicted in Salem Superior Court of possession with intent to distribute heroin, subsequent offense, in violation of Mass. Gen. Laws ch. 94C, § 32(b), and of committing a drug violation within 300 feet of a school or park, in violation of Mass. Gen. Laws ch. 94C, § 32J.  His conviction was affirmed by the Massachusetts Appeals Court ("MAC") in an unpublished decision dated December 1, 2015.  Commonwealth v. Alix, No. 14-P-1602, 88 Mass. App. Ct. 1114, 41 N.E.3d 330, 2015 WL 7723421 (Dec. 1, 2015) (table) (Alix I).  His application for leave to obtain further appellate review ("ALOFAR") was denied by the Massachusetts Supreme Judicial Court ("SJC") on January 27, 2016.  Commonwealth v. Alix, 473 Mass. 1108, 44 N.E.3d 861 (Jan. 27, 2016) (table).  Alix is now serving a state prison sentence of 5 -7 years on count one and 2½ - 5 years on count two, to be served consecutively.

In April 2016, Alix filed a motion for a new trial in state court.  The motion was denied and Alix appealed.  During the pendency of his collateral appeal, on April 10, 2017, Alix filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging (1) ineffective assistance of suppression counsel for failing to investigate questionable facts within a search warrant affidavit; (2) ineffective assistance of appellate counsel for failing to pursue his suppression counsel's inaction on investigating the search warrant; and (3) error by the judge in denying his motion to suppress due to the inadequacy of the search warrant affidavit.

The Government moved to dismiss the habeas petition in its entirety.  While the motion to dismiss the habeas petition was pending, the MAC affirmed the denial of Alix's motion for a new trial in an unpublished decision dated October 25, 2017.  Commonwealth v. Alix, No. 16-P-1416, 92 Mass. App. Ct. 1110, 94 N.E.3d 438, 2017 WL 4803800 (Oct. 25, 2017) (table) (Alix II).  His ALOFAR was denied by the SJC on December 21, 2017.  Commonwealth v. Alix, 478 Mass. 1106, 94 N.E.3d 853 (Dec. 21, 2017) (table).  Thereafter, this court issued a Report and Recommendation ("R&R") recommending that the Government's motion to dismiss be allowed as to Alix's motion to suppress claim, but be denied as to the ineffective assistance of counsel claims.  Docket No. 14.  The R&R was adopted by the District Judge to whom this case is assigned in its entirety.  Docket No. 16.  This matter is now presently before the court on the merits of the surviving ineffective assistance of counsel claims asserted in the habeas petition.

For the reasons detailed herein, this court recommends to the District Judge that Alix's petition for a writ of habeas corpus be DENIED.  Although the defendant has exhausted his state court remedies on his ineffective assistance of counsel claims, the state court decision that neither the actions of his suppression counsel nor of his appellate counsel constituted

ineffective assistance of counsel was not contrary to nor an unreasonable application of federal law as articulated by the United States Supreme Court.

## II.  <u>STATEMENT OF FACTS</u>[1]

The facts relevant to the petitioner's habeas claims are as follows.

## <u>The Underlying Conviction</u>

Prior to the defendant being indicted on the charges at issue in the instant petition, on March 14, 2012, the Salem Police Department obtained a search warrant to search for drugs and drug paraphernalia in his apartment.  SA 322.  The affidavit in support of the search warrant provided the following information:

> 3.) During the middle of February 2012, this Detective, J. Dennis Gaudet, along with Detective Kevin St. Pierre and Brian St. Pierre spoke with a confidential informant (from here on in referred to as C/I), who related that a short, Hispanic male named "Pedro" was selling heroin in Salem, Ma. The C/I further related that "Pedro" drives a gray Saab.  Additional information was that if you call (978) 210-8225 "Pedro" will answer and an order can be placed for heroin.  This detective along with other detectives from the Salem Police Department are familiar with "Pedro" due to involvements with the Salem Police Department.  The detectives are also aware that Pedro Alix operates Massachusetts registration 2NEW30, a 2001 Saab 95 registered to himself.  The C/I reports that it would place a call to (978) 210-8225.  After placing the call "Pedro" would answer and the C/I would make an arrangement to purchase heroin.  The C/I states that it is willing to make controlled purchases of cocaine from "Pedro".

SA 326.[2]  The affidavit then explains that police arranged for the confidential informant to make a controlled buy of heroin from the defendant:

---

[1] The Government has filed a Supplemental Answer ("SA") containing the state court record.  Docket No. 22.  The Petitioner has also filed portions of the record in support of his petition.  Docket No. 19-1.

[2] Neither party has made mention of the errant reference to cocaine at the end of paragraph three of the affidavit.  When read in context, this appears to be a typographical error.

4.) Within 24 hours of February 15, 2012, the C/I agreed to make a controlled purchase of heroin from "Pedro" in Salem, Ma. The C/I met the detectives and was searched for money and controlled substances. In addition to this the motor vehicle that the C/I was operating was also searched for money and controlled substances. After finding no money or controlled substance on its person or in the motor vehicle the C/I was given an amount of documented Salem Police money to conduct the controlled purchase of heroin. A phone call was then placed to "Pedro", (978) 210-8225 for a request to purchase heroin. Immediately following, Detectives Brennan and Kevin St. Pierre set up surveillance. Detective Brennan conducted surveillance at 90-92 Congress St. and Detective Kevin St. Pierre at the transaction location. While at 90-92 Congress St. Detective Brennan observed Pedro Alix exit the residence on the left side of the structure and enter the gray Saab. Det. Brennan then followed the gray Saab to the arranged transaction location. This was done without making any stops along the way and without losing visual contact. Upon arrival to the location Detective Kevin St. Pierre observed Pedro Alix, operating the Saab. While this was going on Detective Gaudet had followed the C/I to the transaction location and remained a short distance from the C/I, this was done without making any stops along the way and without losing visual contact. Detective Gaudet observed the gray Saab being operated by Pedro Alix pull up to the C/I and the C/I entered the passenger side. The C/I remained in the vehicle with Pedro Alix for approximately one minute before exiting. The Saab then traveled back to 90-92 Congress St. and parked directly out front. This was done without making any stops along the way and under constant observation by Det. Kevin St. Pierre. Upon arrival at 90-92 Congress St. Pedro Alix was observed to exit the Saab and walk into the doorway on the left side of 90-92 Congress St. While this was going on Detective Gaudet followed the C/I to a predetermined location. This was done without making any stops along the way and under constant observation by Det. Gaudet. Upon arrival at the predetermined location the C/I handed Detective Gaudet a quantity of heroin. The C/I reports that after observing "Pedro" pull into the location it exited the vehicle and made contact with "Pedro". The C/I reports that it handed "Pedro" the money and "Pedro" handed it the heroin.

SA 326-27. The search warrant affidavit further details that a second controlled purchase was

made on or around March 11, 2012. SA 327 at ¶ 5. Alix was observed driving to the location of

the second controlled purchase directly from his building and meeting with the confidential

[4]

informant.  Id.  Upon completion of the second controlled purchase, Alix left the area to an

unknown location.  SA 328 at ¶ 5.

In addition to these 2012 controlled buys, the affidavit further referenced 2010 events.

Specifically, it was alleged:

> 6.) During the middle of June 2010, the Salem Police Criminal Investigation
> Division initiated an investigation into Pedro Alix.  This investigation
> involved the illegal sales of heroin.  After receiving several complaints
> about Pedro Alix dealing heroin along with a cooperating C/I multiple
> controlled purchases of heroin were conducted.  During the course of this
> investigation Pedro Alix was observed leaving his residence, entering his
> motor vehicle, traveling to the deal location, conducting the controlled
> transaction then traveling back to his residence.  This investigation was
> terminated abruptly after Pedro Alix was arrested by the Salem Police on
> domestic charges and incarcerated at the Middleton House of Corrections
> for a period of time.

Id. at ¶ 6

Based on this affidavit, a search warrant was issued for Alix's residence, Apartment 2F,

in a multi-apartment building.  SA 322.  Upon execution of the search warrant, Salem police

seized six bags of heroin, drug paraphernalia, and other items from the defendant's apartment.

SA 323.  Alix was subsequently indicted by an Essex County grand jury on July 16, 2012 for one

count of possession with intent to distribute heroin, subsequent offense, and one count of

committing a drug violation within 300 feet of a school or park.  SA 3, 320-21.  The indictment

was based on evidence gathered during the execution of the search warrant; the 2012

controlled buys were not charged.  Alix II, 2017 WL 4803800, at *2.

### Pretrial Motions

On October 31, 2012, the defendant filed a motion to suppress the evidence seized at

his apartment, arguing, inter alia, that the affidavit filed in support of the warrant failed to

[5]

establish a nexus between the alleged criminal activity and his home, and that the affidavit did

not explain how the police confirmed that the controlled buys involved heroin.  SA 332; Alix II,

2017 WL 4803800, at *2.  Counsel also argued that the information about the 2010

investigation was stale, and that the information was not credible.  Alix II, 2017 WL 4803800, at

*2.  The judge held a hearing on the motion and took the matter under advisement.  SA 359.

The motion was subsequently denied.  SA 331.  In his ruling on the motion to suppress, the

judge stated:

> The affidavit submitted in support of the application for a search warrant
> described two controlled buys plus additional information including but not
> limited to a 2010 drug investigation of the defendant.  The information was
> not stale as it was based on controlled buys in February and March for a
> search in March.  The informant's statements were corroborated by the
> buys.  The controlled buys were adequately supervised and there is no
> requirement of field testing.  The nexus was adequate (see Commonwealth
> v. Luthy, 69 Mass. App. Ct. 102, 108-109 (2007)).  It is well settled that
> there is no requirement that the informant demonstrate why the
> substance was believed to be heroin, or that the informant have been
> observed to enter the door of the target apartment.

Id.  Two motions for reconsideration were also denied.  SA 317.[3]  The judge's ruling on one of

the motions for reconsideration stated that "[t]his is not a frivolous motion to reconsider, and

although this is a close question of law, it is not excruciatingly close.  On balance, the 2

controlled buys establish the nexus to the target apartment, and the 2010 investigation

establish[es] PC."  SA 345.

The defendant filed motions for discovery on March 21, 2013 and May 10, 2013.  SA

317.  In a ruling issued May 16, 2013, the judge denied the defendant's motion insofar as it

---

[3] Alix asserts that these motions were filed pro se.  It is unclear from the record whether that is the case,
but the discrepancy need not be resolved in connection with this habeas petition.

[6]

requested information about the confidential informant ("CI").  Id.  The judge stated that the request for information on the CI was denied "on this showing," but that the denial was without prejudice.  Id.

**The Verdict and Direct Appeal**

The case then proceeded to trial.[4]  The jury returned a verdict of guilty on both counts on December 13, 2013.  SA 4.  The trial judge then held a jury-waived trial and ruled therein that the possession with intent to distribute conviction was a second and subsequent offense.  See Alix II, 2017 WL 4803800, at *2.  Alix was sentenced on the same day to a state prison term of 5 -7 years on count one, and a consecutive 2½ - 5 year term on count two.  SA 4.

Alix filed a timely appeal, alleging that (1) the motion judge erred in denying his motion to suppress evidence based on the inadequacy of the search warrant; (2) the trial judge erred in denying his motion to exclude statements made to police on the grounds of involuntariness; and (3) the jury instructions were inadequate to explain the Commonwealth's burden to prove that his statements to police were voluntary beyond a reasonable doubt.  Alix I, 2015 WL 7723421, at *1.  The MAC affirmed his conviction in a decision dated December 1, 2015.  Id.  In addressing the defendant's argument as to the inadequacy of the search warrant, the court ruled:

> The affidavit established the defendant's repeated activity of drug delivery originating from his residence, supported in principal by the two controlled transactions closely preceding the grant of the search warrant, and supported additionally by details of a suspended 2010 investigation.  See Commonwealth v. Santiago, 452 Mass. 573, 576 (2008) ("[A]ffidavits in support of search warrants are to be approached with a view toward common sense, read in their entirety and with considerable latitude

---

[4] Alix's attorney at the time of his suppression hearing was allowed to withdraw as counsel on July 19, 2013.  SA 3.  Alix was represented by a different attorney at trial.

> allowed for the drawing of inferences"), quoting from *Commonwealth v. Jimenez*, 438 Mass. 213, 218 (2002).  Thus, the nexus was sufficiently established.

Id. at *2 (footnote omitted).  Alix subsequently filed an ALOFAR with the SJC, which was denied.

Alix, 473 Mass. 1108, 44 N.E.3d 861.

### The Motion for a New Trial

In April 2016, Alix filed a motion for a new trial pro se in Essex Superior Court, asserting claims of ineffective assistance of suppression counsel and appellate counsel.  See SA 364-75. In particular, Alix alleged that suppression counsel had failed to sufficiently investigate the allegations of the affidavit submitted in support of the search warrant, and appellate counsel had failed to raise the issue on direct appeal.  Id.  Alix contended that counsel had failed to investigate the confidential informant, who he believes was fictitious, that there was insufficient information concerning the alleged controlled buys in 2012 to establish a nexus authorizing the search of his apartment, and that the alleged 2010 investigation was a fabrication.  Id.  The motion for a new trial was denied on June 27, 2016.  SA 214.

In a detailed Memorandum of Decision and Order, the motion judge[5] applied the standard for ineffective assistance of counsel as defined by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), acknowledging that the Massachusetts standard set forth in Commonwealth v. Saferian, 366 Mass. 89, 315 N.E.2d 878 (1974), was substantially comparable.  SA 206-08 & n.1.  The motion judge

---

[5] The judge who ruled on the motion for a new trial (the "motion judge") was not the trial judge.  While Alix queries in his Reply Brief why the trial judge did not rule on his motion for a new trial, he does not expound upon that argument.  See Docket No. 26 at 2.  There is nothing in the record which indicates that the assignment of the motion to a new judge was in any way improper.

addressed and rejected Alix's contention that suppression counsel had failed to properly investigate the case for purposes of challenging the search warrant.[6]  SA 209.  In particular, but without limitation, the motion judge concluded that suppression counsel, contrary to Alix's contention, had, in fact, appropriately attempted to challenge the veracity of the confidential informant, and that there was no basis for the identity of the confidential informant to be disclosed because Alix had not been charged with the alleged 2012 controlled buys.  SA 209-10.  The motion judge further rejected Alix's "primary argument" that suppression counsel had failed to "investigate and establish that the portion of the search warrant affidavit that referenced a 2010 drug investigation that allegedly involved controlled buys of heroin from Alix was fictitious and falsely included in the search warrant affidavit."  SA 210.  As an initial matter, the motion judge concluded there was sufficient evidence of a nexus between Alix's apartment and his drug-selling activity to establish probable cause to search the residence based on the observations made in connection with the 2012 buys alone.  SA 212 ("The police surveillance of Alix leaving his apartment building immediately after two separate telephone orders for heroin were placed by the confidential informant, and further surveillance of Alix proceeding directly to the agreed upon meet location . . . provided the issuing clerk-magistrate sufficient factual information to find probable cause that evidence of Alix's drug dealing would be found in his apartment.").

The motion judge also found that Alix had not raised a "legitimate question of the existence or non-existence of the 2010 investigation."  SA 213.  As the motion judge explained,

---

[6] The motion judge also held that Alix had failed to develop his ineffective assistance of counsel claim against appellate counsel, and summarily denied that part of Alix's motion.  SA 206.

Alix was relying on an email allegedly received by defense counsel in January 2016 from a Salem police staffer that provided, in effect, that the Salem police department did not have any "incidents" or "arrests" on file for Alix for the middle of June 2010.  Id.  As the judge explained further:

> No affidavit accompanies the e-mail.  Although the e-mail indicated that the sender would welcome additional information and would wait to hear back from Alix's counsel, Alix has provided no indication that any such further contact was made.  Whatever the meaning of the e-mail, it does not stand for the proposition that the 2010 drug investigation, which did not lead to any "arrest" or "incident," was a fabrication in the search warrant affidavit.  As defendant is entitled to a *Franks* hearing after he makes a substantial preliminary showing that: (1) a search warrant affiant made a false statement or omission, either knowingly or intentionally, or with reckless disregard for its truth; and (2) at least in the case of reckless falsehood, that the misstatement or omission is necessary to the existence of probable cause.  See *Franks*, 438 U.S. at 155-156; *Commonwealth v. Ramos*, 402 Mass. 209, 215 (1988).  "The defendant's initial burden is not a light one."  *Commonwealth v. Long*, 454 Mass. 542, 552 (2009).  Here, even if the information in the e-mail was provided to the court by [counsel], with a request for a *Franks* hearing, it would not have been sufficient.  The unexplained and ambiguous e-mail would not have constituted the necessary substantial preliminary showing that the alleged 2010 investigation was a fabrication.

SA 213-14.

Alix filed a notice of appeal of the denial of the motion for a new trial on July 8, 2016.  SA 393.  The appeal was pending at the time Alix filed the instant habeas petition on April 10, 2017, as a result of which Alix requested in his petition that it be stayed pending the state court appeal of his motion for a new trial.  See Docket No. 1 at 5.  The Government moved to dismiss the habeas petition because, inter alia, the claims were unexhausted in state court.  See Docket No. 10.

The MAC affirmed the denial of the defendant's motion for a new trial in an unpublished opinion dated October 25, 2017.  Alix II, 2017 WL 4803800.  Applying the standard set forth in Commonwealth v. Saferian, the MAC rejected the defendant's contention that suppression counsel was ineffective for failing to investigate the veracity of the search warrant affidavit.  Id. at *2-3.  The court ruled:

> The defendant argues that suppression counsel was ineffective in failing to investigate the affiant's statements concerning the 2010 investigation.  The defendant speculates that (1) further investigation of the statements regarding the 2010 investigation would have unearthed evidence contradicting the affidavit, and (2) this evidence would have forced a Franks hearing where it would have been possible to challenge the other assertions contained in the affidavit.  See Franks v. Delaware, 438 U.S. 154, 155-156 (1978).  We disagree.
>
> To begin, the record provides no basis to question the affiant's statements concerning the 2010 investigation.  Even were we to overlook this infirmity, the defendant's argument would nonetheless fail because the detailed description of the two controlled purchases in 2012 provided sufficient basis for a finding of probable cause.  A Franks hearing would not have been required because the 2010 investigation was not "necessary to the finding of probable cause."  Franks, 438 U.S. at 156. See Commonwealth v. Luthy, 69 Mass. App. Ct. 102, 103-108 (2007) (finding probable cause where police observed defendant engage in two controlled purchases, and informant also stated that the defendant was distributing drugs).
>
> Concerning the 2012 controlled buys, the defendant's speculation that further investigation might have shown that the controlled purchases did not in fact occur, "without more, is not a sufficient basis to establish ineffective representation." Commonwealth v. Duran, 435 Mass. 97, 103 (2001).

Id. at *3 (footnotes omitted).

The MAC also rejected the defendant's argument that suppression counsel had failed to challenge the reliability of the CI.  Id.  As the court observed, suppression counsel *had* challenged the CI's reliability in the motion to suppress.  Id.  The court further stated:

> Nor was suppression counsel ineffective in failing to seek disclosure of the informant. Such disclosure was not required because the informant was not a percipient witness to the execution of the search warrant, the 2012 controlled purchases were not charged, and the informant could not otherwise provide material evidence to the defense. See <u>Commonwealth</u> v. <u>Lugo</u>, 406 Mass. 565, 570–571 (1990). Contrast <u>Commonwealth</u> v. <u>Elias</u>, 463 Mass. 1015, 1016 (2012).

<u>Id.</u> (footnote omitted). Since suppression counsel was not ineffective, the MAC concluded that "appellate counsel was not ineffective when he did not raise the issues on direct appeal." <u>Id.</u>

Alix filed an ALOFAR with the SJC, which was denied without opinion on December 21, 2017. <u>Alix</u>, 478 Mass. 1106, 94 N.E.2d 853.

### The Habeas Petition

As detailed above, on April 10, 2017, Alix filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Alix raised three Grounds for relief. Ground One of Alix's habeas petition asserted ineffective assistance of suppression counsel for failing to investigate questionable facts within the search warrant affidavit. Ground Two of the petition asserted ineffective assistance of appellate counsel for failing to pursue his suppression counsel's inaction on investigating the search warrant. Ground Three asserted that the motion judge erred in denying the motion to suppress because the affidavit was inadequate. <u>See</u> Docket No. 1 at 5-8. On May 31, 2017, the Government moved to dismiss the habeas petition, arguing that Alix's Fourth Amendment claim was barred by <u>Stone v. Powell</u>, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), and that the two ineffective assistance of counsel claims had not been exhausted as Alix's state court appeal of the denial of his motion for a new trial was still pending. <u>See</u> Docket Nos. 10, 11.

On February 13, 2018, this court issued a R&R recommending that the motion to dismiss be allowed as to Alix's motion to suppress claim because Alix had the opportunity to fully and fairly litigate the issue before the state courts and his Fourth Amendment claim was therefore barred.  Docket No. 14 at 2-3; see Stone, 428 U.S. at 494, 96 S. Ct. at 3052 ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted)).  However, because Alix's state court appeal had been resolved during the pendency of the motion to dismiss, this court recommended that the motion be denied as to Alix's ineffective assistance of counsel claims.  Docket No. 14 at 2.  The R&R was adopted by the District Judge on March 7, 2018.  Docket No. 16.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

#### A.  Exhaustion

The Government contends that, as an initial matter, the petitioner has not exhausted his state court remedies on his ineffective assistance of appellate counsel claim.  As referenced above, the question of whether the petitioner exhausted his state court remedies was also the subject of the Government's motion to dismiss in this case.  The Government previously argued that because the petitioner's appeal of the denial of his motion to dismiss was then still pending in state court, he had not fully exhausted his state court remedies on either ineffective assistance of counsel claim.  The Government now advances a new exhaustion argument not contained within its motion to dismiss—that Alix's claim of ineffective assistance of appellate

counsel has not been exhausted because it was not explicitly mentioned in the petitioner's ALOFAR on his motion for a new trial.[7]

It is well established that "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thus giving the state the first 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Josselyn v. Dennehy, 475 F.3d 1, 2-3 (1st Cir. 2007) (quoting Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (per curiam) (internal citations omitted)). Accordingly, absent "exceptional circumstances," "a habeas petitioner in state custody may not advance his or her constitutional claims in a federal forum unless and until the substance of those claims has been fairly presented to the state's highest court." Barresi v. Maloney, 296 F.3d 48, 51 (1st Cir. 2002). Where, as here, a petitioner sought review from the SJC via an ALOFAR, and the ALOFAR was denied, the ALOFAR is considered "'the decisive pleading' for purposes of determining whether the petitioner has satisfied the exhaustion requirement." Gonsalves v. Thompson, 396 F. Supp. 2d 36, 40 (D. Mass. 2005) (footnote and citation omitted). Thus, the petitioner "may not raise an issue before the Appeals Court, abandon it in his ALOFAR, and then raise it again in his habeas petition[.]" Id. The Government contends that the petitioner has done just that.

Here, Alix raised the issues of ineffective assistance of appellate counsel in his motion for a new trial and the argument was rejected by the Superior Court. SA 206. The argument was also presented to the MAC and the MAC issued a decision addressing the claim. SA 248,

---

[7] The Government did not advance this argument in its motion to dismiss because, at the time, the petitioner had not yet filed his ALOFAR. While the scope of the ALOFAR was not at issue in this court's earlier R&R, this court recognizes that therein this court incorrectly stated that both ineffective assistance claims had been presented to the SJC in the petitioner's ALOFAR. See Docket No. 14 at 7.

418.  As the Government correctly notes, however, Alix's ALOFAR only mentions ineffective

assistance of suppression counsel, not appellate counsel.  See SA 421-29.  However, since Alix's

ineffective assistance of appellate counsel claim is premised on, and dependent on, the same

factual and legal argument as his ineffective assistance of suppression counsel claim, this court

recommends that the Government's request that the claim be dismissed as unexhausted be

denied.  See Rosenthal v. O'Brien, 713 F.3d 676, 688 (1st Cir. 2013) (upholding district court

analysis that ineffective assistance of appellate counsel claim had adequately been exhausted

where it was mere variation of ineffective assistance of trial counsel claim that had undeniably

been exhausted).

   **B.**     **Standard of Review for Habeas Petitions**

   With respect to the merits of Alix's habeas corpus petition, the standard of review to be

applied to his petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA").  The standard allows a federal court to grant a

writ of habeas corpus only if the underlying state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or (2) resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d).  A writ of habeas corpus is only appropriate "under the 'contrary to' clause

if the state court applies a rule different from the governing law set forth in [the Supreme

Court] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of

materially indistinguishable facts."  Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L.

Ed. 2d 914 (2002).  "[A] state court adjudication constitutes an unreasonable application of

clearly established federal law if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case."  Tran v. Roden, 847 F.3d 44, 48 (1st Cir. 2017) (internal quotations, punctuation and citation omitted).  An unreasonable application is more than just error, entailing "some increment of incorrectness beyond error[.]"  McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (internal quotations and citation omitted).  The "increment of incorrectness beyond error" "must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court."  Id.  Moreover, under this analysis, "a state court is afforded deference and latitude."  Hensley v. Roden, 755 F.3d 724, 731 (1st Cir. 2014) (citation omitted).  With respect to factual findings, as mandated by 28 U.S.C. § 2254(e)(1), the "state court's factual findings are presumed to be correct unless the petitioner rebuts the presumption with clear and convincing evidence."  Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012).

Finally, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  Tran, 847 F.3d at 49 (internal quotations, punctuation and citations omitted). Accordingly, "to obtain federal habeas relief, a petitioner must show the state court's ruling on the claim was so lacking in justification that there was an error well understood and compre-hended in existing law beyond any possibility for fairminded disagreement."  Id. (internal quotations, punctuation and citations omitted).  Applying these standards to the instant case compels the conclusion that Alix's habeas petition should be denied.

C.      **Ground One: Ineffective Assistance of Suppression Counsel**

As discussed above, the defendant argues in principle part that his suppression counsel

was constitutionally ineffective for failing to investigate the facts contained within the search

warrant affidavit prior to the suppression hearing.  For the reasons discussed below, this court

concludes that the state court's determination that suppression counsel was not ineffective is

not contrary to or an unreasonable application of Supreme Court law.

1.      **Standard for Ineffective Assistance of Counsel**

The state court appropriately applied the standard for judging the merits of a claim of

ineffective assistance of counsel as set forth in Strickland.[8]  As the Strickland court held:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel was
> not functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the deficient perfor-
> mance prejudiced the defense.  This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it cannot be
> said that the conviction ... resulted from a breakdown in the adversary
> process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064.

"Under the first prong of *Strickland*, there is a strong presumption that counsel's

strategy and tactics fall within the range of reasonable professional assistance, and courts

should avoid second-guessing counsel's performance with the use of hindsight."  Knight v.

Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotations and citation omitted).  "It is only

---

[8] It is well established that the standard set forth in the Massachusetts case of Commonwealth v.
Saferian is "the functional equivalent of the *Strickland* standard."  Mello v. DiPaulo, 295 F.3d 137, 145
(1st Cir. 2002).  Since the MAC relied on Saferian, "the state court did not apply a legal rule that
contradicts an established Supreme Court precedent."  Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008).

where, given the facts known at the time, counsel's choice was so patently unreasonable that

no competent attorney would have made it, that the ineffective assistance prong is satisfied."

Id. (internal quotations omitted).  With regard to counsel's duty to investigate, "strategic

choices made after less than complete investigation are reasonable precisely to the extent that

reasonable professional judgments support the limitations on investigation.  In other words,

counsel has a duty to make reasonable investigations or to make a reasonable decision that

makes particular investigations unnecessary."  Strickland, 466 U.S. at 690-91, 104 S. Ct. at 2066.

Thus, "a particular decision not to investigate must be directly assessed for reasonableness in

all the circumstances, applying a heavy measure of deference to counsel's judgments."  Id. at

691, 104 S. Ct. at 2066.  In making this assessment, "a court must consider not only the

quantum of evidence already known to counsel, but also whether the known evidence would

lead a reasonable attorney to investigate further."  Wiggins v. Smith, 539 U.S. 510, 527, 123 S.

Ct. 2527, 2538, 156 L. Ed. 2d 471 (2003).

    "Under the prejudice prong, not all errors by counsel are sufficient to meet the standard

of a reasonable probability that, but for the counsel's errors, the result of the proceeding would

have been different."  Knight, 447 F.3d at 15.  The probability must be "sufficient to undermine

confidence in the outcome," and the burden is a "heavy" and "highly demanding" one.  Id.

(internal quotations and citations omitted).  "A defendant's failure to satisfy one prong of the

Strickland analysis obviates the need for a court to consider the remaining prong."  Id.

    Applying these principles to the instant case, the petitioner has failed to establish that

the MAC's adjudication resulted in a decision that was contrary to or involved an unreasonable

application of clearly established federal law.

[18]

2.      **Duty to Investigate**

The defendant asserts that suppression counsel's failure to investigate the search warrant affidavit amounted to ineffective assistance of counsel.  He believes suppression counsel had a duty to investigate because (1) the 2010 investigation referenced in the affidavit has been shown to be fictitious, (2) crucial information was missing from the description of the 2012 controlled buys, and (3) the confidential informant was fictitious.  This court addresses each assertion in turn.

**2010 Investigation**

The search warrant affidavit indicates that Salem Police initiated an investigation into the defendant in mid-June 2010 on suspicion of selling heroin.  SA 328.  According to the affidavit, the investigation was abruptly terminated when the defendant was arrested by Salem Police on domestic charges.  Id.  The defendant asserts that this portion of the affidavit is fictitious, and that suppression counsel had a duty to locate information to prove as much.  In support of his argument, Alix points to an unverified email that an executive assistant with the Salem Police Department purportedly sent to Alix's appellate counsel in January 2016.  The email states in relevant part, "The Salem Police Department is in receipt of your request for records relative to an investigation of PEDRO ALIX during the middle of June 2010.  We do not have any incidents and or arrests on file for Mr. Alix during that time period."  SA 382.  The defendant contends that this email demonstrates that the 2010 investigation did not occur and that the search warrant affidavit is untrustworthy.

As detailed above, Alix's arguments relating to the 2010 investigation were considered and rejected by the motion judge who ruled on his motion for a new trial and the MAC in

connection with its review of the denial of his motion for a new trial.  The state court concluded that there was ample probable cause for the issuance of the search warrant even without consideration of the 2010 investigation, and that Alix had not put forth sufficient facts to raise a question about the validity of the affidavit.  There is no basis to disturb these conclusions in connection with this habeas petition.  The sufficiency of the facts relating to the 2012 transactions will be discussed <u>infra</u>.  The state court's conclusion that the unverified email "does not indicate that the 2010 investigation did not occur" is amply supported by the record. <u>Alix II</u>, 2017 WL 4803800, at *3 n.4.  The affidavit does not allege that any charges were brought against Alix in connection with the 2010 investigation, so the unverified email does not contradict the facts of the affidavit.  Moreover, this court notes that Alix's criminal record does show, consistent with the affidavit, that he was arrested on domestic charges in the summer of 2010.  <u>See</u> SA 87, 88.  The MAC's conclusion that "the record provides no basis to question the affiant's statements concerning the 2010 investigation" was not an unreasonable determination of fact or an unreasonable application of clearly established federal law.  <u>Alix II</u>, 2017 WL 4803800, at *3 (footnote omitted).  Alix has not established that he would have been entitled to a <u>Franks</u> hearing under federal law.[9]

## 2012 Controlled Buys

In connection with the 2012 controlled buys, Alix argues that the affidavit is lacking details about the buys, such as proof that heroin was involved, or the amount of drugs or

---

[9] As noted above, under <u>Franks v. Delaware</u>, a defendant is entitled to a hearing if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]"  438 U.S. at 155-56, 98 S. Ct. at 2676.

money involved, and contends that "there is no evidence to establish that these buys occurred other than the affiant's own words[.]"  Docket No. 26 at 2-4; Docket No. 19 at 4-5.  Relying on Commonwealth v. Smith, 57 Mass. App. Ct. 907, 783 N.E.2d 463 (2003), he further argues that there were insufficient facts to establish probable cause that heroin would be found in his apartment.  Docket No. 26 at 3.  These arguments were considered and rejected by the MAC on direct appeal, and by the motion judge and the MAC in connection with the motion for a new trial.  These state court decisions were not an unreasonable application of federal law.

    As detailed in the search warrant application, Pedro Alix was known to the affiant and other Salem Detectives.  See SA 326 (Aff. ¶ 3).  They were familiar with his car, and his name is listed on the mailbox for Apt. 2F, which is the apartment that was searched.  Id.; SA 324.  In addition, the police had significant evidence that Alix lived at the address for which the warrant was obtained.  SA 328 (Aff. ¶ 7).  They further confirmed that the car that Alix was seen in meeting with the CI was registered to Alix.  See SA 328-29 (Aff. ¶ 8).  The confidential informant called "Pedro" to set up two purchases of heroin, and Alix was observed leaving his apartment building, driving his car, meeting with the CI and, after the first controlled buy, returning directly to his apartment building.  (SA 326-27 (Aff. ¶¶ 4-5).  The CI reported that "Pedro" had accepted the money the CI provided in exchange for the heroin the CI had ordered.  SA 328 (Aff. ¶ 5).

    On direct appeal, the MAC ruled that "the affidavit in support of the search warrant application sufficiently described the 'nexus between the defendant's drug-selling activity and his residence to establish probable cause to search the residence' of the defendant at 90-92 Congress Street, Apartment 2F, on March 15, 2012."  Alix I, 2015 WL 7723421, at *1.  In so

[21]

concluding, the MAC applied the standard that "affidavits in support of search warrants are to be approached with a view toward common sense, read in their entirety and with considerable latitude allowed for the drawing of inferences." Commonwealth v. Santiago, 452 Mass. 573, 576, 896 N.E.2d 622, 625-26 (2008); see Alix I, 2015 WL 7723421, at *2 (citing to Santiago standard in analyzing search warrant affidavit).  This is consistent with federal law as defined by the Supreme Court.  See Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983); see also United States v. Dedrick, 840 F. Supp. 2d 482, 488 (D. Mass. 2012).

The motion judge, applying the same standard, also ruled that "[t]he police surveillance of Alix leaving his apartment building immediately after two separate telephone orders for heroin were placed by the confidential informant, and further surveillance of Alix proceeding directly to the agreed upon meet location . . . provided the issuing clerk-magistrate sufficient factual information to find probable cause that evidence of Alix's drug dealing would be found in his apartment." SA 211-12.  On appeal from the denial of Alix's motion for a new trial, the MAC confirmed that "the detailed description of the two controlled purchases in 2012 provided sufficient basis for a finding of probable cause." Alix II, 2017 WL 4803800, at *3.

These conclusions are consistent with, and are not an unreasonable application of, federal law.  See United States v. Rivera, 825 F.3d 59, 63 (1st Cir. 2016) ("Common sense . . . says that when a criminal peddles narcotics outside his home, one can infer that evidence of his drug dealing activity will be found in the home, at least when he is spotted leaving the home immediately prior to selling drugs" (internal quotations and citation omitted)); see also Dedrick, 840 F. Supp. 2d at 488-89.  Consequently, there is no basis to disturb the state court ruling

[22]

denying Alix's claim of ineffective assistance of counsel.[10]   See Kimmelman v. Morrison, 477 U.S.

365, 375, 106 S. Ct. 2574, 2583, 91 L. Ed. 2d 305 (1986) (petitioner must demonstrate that "his

Fourth Amendment claim is meritorious" in order to demonstrate actual prejudice on an

ineffective assistance claim premised on the failure to litigate the Fourth Amendment claim

competently).

Alix's reliance on Commonwealth v. Smith is also misplaced.  There, the MAC concluded

based on the facts presented that there was not probable cause that there would be drugs in

the defendant's home.  Smith, 57 Mass. App. Ct. at 908, 783 N.E.2d at 466.  Here, Alix was

observed twice leaving his apartment building and driving directly to meet with the confidential

informant to consummate a drug transaction – there were no stops along the way where he

could have picked up drugs.  As the SJC more recently has held, "[o]bservations by police of a

suspect on multiple occasions leaving his residence and proceeding directly to a prearranged

location to sell drugs can support a reasonable inference that the suspect is a drug dealer who

stores drugs or packages drugs for resale in his residence."  Commonwealth v. Escalera, 462

Mass. 636, 643, 970 N.E.2d 319, 326 (2012).  There is no basis to disturb the state court's

decision that the search warrant affidavit was sufficient.[11]

---

[10] The defendant points out that the suppression judge remarked that it was a "close" question of law as
to whether there was probable cause.  While the judge did make such an observation, this remark was
within the context of the judge's statement that "although this is a close question of law, it is not
excruciatingly close."  Moreover, even if the question was a close one, Alix has not overcome the
presumption of correction and deference that a habeas court gives to state court decisions.

[11] In fact, the continued viability of Smith is doubtful.  See Commonwealth v. Sanders, No. 17-P-107, 92
Mass. App. Ct. 1122, 102 N.E.3d 426, 2018 WL 347665, at *1 n.2 (Jan. 10, 2018) (table) (doubting
whether Smith "has much vitality, if any," after Escalera).

Finally, the defendant has also failed to identify any exculpatory evidence that would have been uncovered by further investigation of the 2012 buys.  See Alicea-Torres v. United States, 455 F. Supp. 2d 32, 46 (D.P.R. 2006) (rejecting ineffective assistance argument where "the Petitioner has identified no exculpatory evidence or additional defensive theories that would have been discovered or developed had his counsel investigated the case more thoroughly").  As the MAC concluded, "the defendant's speculation that further investigation might have shown that the controlled purchases did not in fact occur, without more, is not a sufficient basis to establish ineffective representation." Alix II, 2017 WL 4803800, at *3 (internal quotations and citation omitted).  That conclusion is consistent with, and not an unreasonable application of, Supreme Court law.  See Janosky v. St. Amand, 594 F.3d 39, 49 (1st Cir. 2010) ("Where, as here, the result of counsel's alleged failure to investigate is wholly speculative, *Strickland*'s prejudice prong is not satisfied.").

**Confidential Informant**

Alix appears to be basing his claim of ineffective assistance of counsel vis-à-vis the confidential informant on the argument that counsel allegedly failed to investigate the confidential informant, who may, in fact, never have existed.  Like with his other claims, Alix fails to recognize that the clerk-magistrate is entitled to rely on the detailed affidavit submitted by law enforcement, and that mere speculation on the part of the defendant is not enough — he must come forward with a "substantial preliminary showing" of the intentional inclusion of false information in the affidavit.  See Franks, 438 U.S. at 155-56, 98 S. Ct. at 2676.  Alix has failed to do so.

[24]

The record establishes that Alix's counsel did move to suppress the evidence found in

his apartment, and did challenge the reliability of the CI.  Thus, as the MAC found, suppression

counsel was not ineffective in this regard.[12]  Alix II, 2017 WL 4803800, at *3.  Similarly, the state

court's ruling that the identity of the CI did not have to be disclosed "because the informant

was not a percipient witness to the execution of the search warrant, the 2012 controlled

purchases were not charged, and the informant could not otherwise provide material evidence

to the defense" is consistent with federal law.  Id. (footnote and citations omitted); see United

States v. Robinson, 144 F.3d 104, 106 (1st Cir. 1998) (explaining that heavy burden is on

defendant to obtain disclosure of identity of confidential informant, but that "if . . . the

informant is the sole participant, other than the accused, in the transaction charged, or if the

informant is the only person who is in a position to amplify or contradict crucial testimony of

government witnesses, then the court may order disclosure." (citing Roviaro v. United States,

353 U.S. 53, 64, 77 S. Ct. 623, 629-30, 1 L. Ed. 2d 639 (1957))).  Alix has failed to establish that

he is entitled to habeas relief on the basis that counsel was ineffective in connection with

obtaining information about the confidential informant.

>    **D.       Ground Two: Ineffective Assistance of Appellate Counsel**

As discussed in this court's exhaustion analysis, supra, the petitioner's argument as to

appellate counsel is merely a variation on his ineffective assistance of suppression counsel

claim, and is dependent on a finding that suppression counsel was ineffective.  Thus, the "denial

of the ineffective assistance of [suppression] counsel claim[] will necessarily lead to denial of

---

[12] For this reason, the cases relied on by Alix are inapposite.  See, e.g., Rivera v. Thompson, 879 F.3d 7
(1st Cir. 2018) (failure to move to suppress inculpatory statements constituted ineffective assistance).

the ineffective assistance of appellate counsel claim."   Jaynes v. Mitchell, C.A. No. 03-11582-

WGY, 2015 WL 881245, at *10 n.7 (D. Mass. Mar. 2, 2015), subsequently aff'd, 824 F.3d 187 (1st

Cir. 2016).  Accordingly, because Alix is not entitled to relief on his ineffective assistance of

suppression counsel claim, his ineffective assistance of appellate counsel claim similarly fails.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that Alix's petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 be DENIED.[13]


/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[13] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to
these proposed findings and recommendations must file a written objection thereto with the Clerk of
this Court within 14 days after being served with this Report and Recommendation.  The written
objections must specifically identify the portion of the proposed findings, recommendations or report to
which objection is made and the basis for such objections.  The parties are further advised that the
United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this
Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d
271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart,
Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79
(1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140,
153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199
F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v.
Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).